# APPENDIX.

THE FOLLOWING OPINION IS PUBLISHED BY PERMISSION.

## *In re* JOHN LEACH.

### Habeas Corpus. *Probate Court. Imprisonment for Contempt. Imprisonment for Debt.*

On October 14, 1876, the Probate Court ordered the executor of the will of L. to pay L's widow $12 per month during the settlement of the estate. On January 14, 1877, it ordered him to pay her the further sum of $18 per month, to begin February 10, 1878. On February 24, 1878, .the widow brought a petition to said court alleging non-compliance with those orders, and praying that the executor be cited to show cause why he should not be committed for contempt. The executor appeared on the 25th, and a hearing was had. The case was continued to March 3, 1879, when the court adjudged that the executor was in contempt, and ordered him to be committed to jail, to remain till he should "obey and perform said orders," or "otherwise be delivered by due course of law," and, on warrant reciting those orders and non-compliance therewith, the executor was committed to jail. He thereupon brought *habeas corpus*. *Held*, that if the order of commitment was for imprisonment as punishment for contempt, it was irregular, as being without limit ; and that if the order was for imprisonment until the executor purged himself by paying the stipends, he was held in contempt in matters which had not occurred at the time of the hearing, and in which he had had no hearing and no opportunity to be heard.

*Held*, also, that the orders for payment created a mere judgment debt, and that the Probate Court had no power, any more than courts of general jurisdiction, to imprison for debt, and that the executor should be discharged.

REDFIELD, J. The return of the sheriff shows that he holds the relator in jail at Manchester, in Bennington County, solely by virtue of a warrant of the Probate Court for the district of Fair Haven. The court had made a decree on the 14th of October, 1876, ordering the relator to pay to Rosina Leach, widow of Ebenezer Leach, deceased, out of the personal estate of the deceased, during the settlement of said estate, the sum of twelve dollars per month, to be paid on the 10th day of each and every month thereafter during the settlement of said estate ; and did then and there further order the relator, as executor of said estate, to pay to said Rosina the further sum of fifty dollars within one month there-

*In re* Leach.

after, to defray the expenses of said Rosina in procuring said order. And afterwards, on the 14th of February, 1877, said Probate Court did order the relator, as executor, to pay to said Rosina the further sum monthly of eighteen dollars, to commence on the 10th of February, 1878. And on the 24th of February, 1878, said Rosina brought her petition to said court, alleging non-compliance of the relator with these orders, and praying that the relator be cited to show cause why he should not be committed and punished for contempt in not obeying the same. The relator was cited, and appeared on the 25th of February, 1878, and a hearing was had, and the case was continued and held by said court until March 3d, 1879, when the said court adjudged that the relator was in contempt of the authority of said court in not obeying and complying with said orders and decrees, and the court ordered the relator to be committed for his said contempt to the common jail at Manchester, there to remain until he shall obey and perform said orders and decrees of said court, or otherwise be delivered by due course of law. And upon a warrant reciting these orders and non-compliance, the relator was committed to jail.

I. If this be imprisonment as a *punishment* for contempt of the Probate Court, the order is irregular, as being without limit; if it be regarded as imprisonment until he purges himself by paying the stipends which he was adjudged in contempt for not paying, then he is held in contempt in matters in which he has had no hearing and no opportunity to be heard. These orders (except the one for the payment of $50) are continuous, and the duty accrues monthly, down to the present. The relator may claim that he has paid, or has other defence to, the stipends becoming due after the 23d of February, 1878. He has not been adjudged in contempt for not paying these, for the duty under the orders accrued after the petition was served on him upon which the contempt was adjudged.

The warrant requires the sheriff to imprison him until he complies with the orders; and the orders are to pay $50 and $30 on the 10th of each month pending the settlement of the estate. And the sheriff is to judge at his peril of the time when the estate is settled. I think the warrant will not justify the imprison-

ment of the relator as a *punishment* for contempt. For it specifies no limit to the imprisonment; and a commitment of a person until he shall be " discharged by due course of law," when there is no " due course of law " by which he could be discharged, is virtually perpetual imprisonment. *Rex* v. *James,* 5 B. & Ald. 894 ; *Rex* v. *Hall,* 3 Bur. 1636. And he is imprisoned for contempt in matters that had not occurred at the time of the hearing, and in which there has been no adjudication of contempt. Where a witness is contumacious and refuses to obey the order of court, or when an administrator refuses to obey the order of the Probate Court in giving evidence, or other specific requirement, it would, no doubt, be competent, as a means of compelling obedience to the order of court, for the court to order imprisonment so long as the contumacy should continue. *Goff's Case,* 3 M. & S. 202. But, in such case, the court ordering the imprisonment judges of the time when contumacy ends ; and whether it would be competent for a court to order an imprisonment, without limit on the face of the order, beyond the term of the court inflicting the punishment, need not be discussed here. This is not a case of contemptuous conduct in court ; or of refusal to comply with the requirement of the court in the hearing of a case ; or in such matters as are referred to by Chief Justice Redfield in *In re Bingham,* 32 Vt. 329. But it is a final order or decree, creating a debt or duty to be performed and discharged in the future. It is in the nature of a final process authorizing the sheriff to seize the body of the relator in satisfaction of a debt which has become due, and imprison that body until it shall be redeemed by the payment, not only of such debts as the court have adjudged to remain unpaid, but all such as by the terms of such decrees shall become due thereafter and during the imprisonment. If such final process is legally allowable, it should state the sum to be paid, and it should not be left to the jailor, a ministerial officer, to determine when the accruing monthly stipends ceased, and whether interest was to be computed after default.

II. Has the Probate Court legal authority to imprison an executor until he complies with and pays a final order for the payment of money ? It is a judgment debt, and imprisonment for debt

has been abolished by statute. A judgment or decree for the payment of money is a " contract " within the purview of the statute. *Sawyer* v. *Vilas*, 19 Vt. 43. Decrees of the Court of Chancery, so far as pertains to imprisonment of the body of the debtor, stand alike with judgments at law. *Cannon* v. *Norton*, 16 Vt. 334. It is said that the executor stands in a fiduciary relation to the estate, and it is necessary that the Probate Court should have power to compel obedience to its decrees. Yet a Court of Chancery has the general jurisdiction over trusts and fiduciary relations, and no such power is given to that court ; it can, indeed, execute its final decrees by process of execution, which is withheld from the Probate Court. The reason is not obvious why such important powers should be withheld from courts of general jurisdiction, and given to a court of special and limited jurisdiction. The statute is, indeed, broad enough to include all decrees of the Probate Court, but it is obvious that the Legislature, in enacting this statute, intended to give the Probate Court power to protect itself, and to enforce its orders and decrees in such manner and to such extent as pertained by law and usage to courts of general jurisdiction. It is claimed that this stipend to the widow is necessary for her support, and unless compliance with the order is compelled, she and her little ones would starve ; and the manuscript opinion of the Supreme Court, denying appeal in this case, is referred to. The *inconvenience* to the parties must certainly be very great, to authorize the court to overrule a positive statute. But in that case the court decided that the right of appeal in such case was *not* given ; in this case it is claimed that the power is to be inferred *affirmatively*, to imprison the debtor, because the necessity of the case would render such summary power to imprison *very convenient.* I think this claim in direct conflict with the case *In re Bingham*, without precedent, and at war with the general legislation and policy of the State denying and prohibiting imprisonment for debt.

*The relator is discharged.*